UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| MICHAEL B. HOLLAND, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos. 2:16-CV-221, 2:10-CR-111 |
| | ) | *Judge Jordan* |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Petitioner Michael B. Holland's pending pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is before the Court for disposition [Doc. 1].[1] The United States responded in opposition [Doc. 2]. Petitioner did not reply, and the time to reply has now passed. E.D. Tenn. L.R. 7.1, 7.2. Also pending before the Court are Petitioner's motion for appointment of counsel and two motions to supplement his § 2255 motion [Docs. 3-5].

The Court has reviewed the parties' submissions and now finds that the record in this case establishes conclusively that Petitioner is not entitled to relief under § 2255; thus, no evidentiary hearing is necessary. *See* Rule 8(a), Rules Governing § 2255 Cases. For the following reasons, Petitioner's § 2255 motion [Doc. 1] will be DENIED and DISMISSED WITH PREJUDICE, his motion to appoint counsel [Doc. 3] will be DENIED, and his motions to supplement [Docs. 4-5] will be GRANTED.[2]

---

[1] Unless otherwise indicated, document references in this Opinion are to Case No. 2:16-CV-221.

[2] The Court will grant Petitioner's motions to supplement because they flesh out the undeveloped claim under *Johnson v. United States*, 135 S. Ct. 2251 (2015), asserted in his § 2255 motion, and because allowing supplementation will facilitate review of his *Johnson* claim.

## II. MOTION TO VACATE

Petitioner offers two general grounds for § 2255 relief. Petitioner's first claim is based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague [Doc. 1 at 3]. Petitioner's second claim is that his counsel gave him ineffective assistance by failing to explain to him mitigating factors, specifically the import of his mental health issues [*Id.* at 4]. A proper explanation of this mitigating factor, according to Petitioner, would have afforded him a downward departure in his sentence [*Id.*].

Respondent opposes the motion, arguing that it is untimely, that Petitioner's *Johnson* claim is barred by the § 2255 waiver in his plea agreement, and that the *Johnson* claim furnishes no basis for relief [Doc. 2]. Petitioner's claim of ineffective assistance, so argues Respondent, likewise is untimely and also is without merit.

### A.     Procedural and Factual Background

Petitioner was charged in an indictment with two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951 [Doc. 1, Case No. 2:10-CR-111]. The government filed an information to establish Petitioner's prior felony convictions for robbery, attempted aggravated robbery (2 convictions), and armed robbery [Doc. 16, Case No. 2:10-CR-111]. Nearly two years after the Hobbs Act robberies, Petitioner agreed to plead guilty, pursuant to a Rule 11(c)(1)(C) negotiated plea agreement, to Hobbs Act robbery as charged in counts one and two in the indictment [Doc. 38, Case No. 2:10-CR-111].

As a factual basis for his plea, Petitioner stipulated to the following facts:

Just before midnight on September 26, 2010, Johnson City, Tennessee police officers responded to a reported armed robbery [*Id.* at ¶ 3]. The officers spoke with the cashier at a Roadrunner Market on Unaka Avenue, who told them that a tall, skinny black male, wearing blue jeans and a green jacket, entered the store, and came behind the counter, while holding one hand over his mouth and a white-handled steak knife in the other hand. The robber had the cashier give him the money from two cash register drawers, then the robber got into a gray Toyota Camry being driven by a white female. The incident was captured on video surveillance equipment.

Some two and a half hours later, at 2:35 a.m. on September 27, 2010, police officers responded to a 911 call reporting an armed robbery at a Roadrunner Market on Cherokee Road in Johnson City. During the call, the cashier stated that a slightly-bearded, black male, wearing blue jeans and a green hoodie, put a knife to the cashier's neck, and took all the cash, including a roll of dimes and a roll of quarters, from two cash register drawers. The cashier said that the robber was driving an older model, gray Toyota Camry or Nissan.

Officers noted the similarities between the two robberies. Shortly thereafter, officers stopped a 1989 gray Toyota Camry, which matched the description of the car used in the robberies. Petitioner was driving the car, and he was wearing blue jeans and a green hoodie. A roll of quarters, a roll of dimes, and a steak knife were lying on the front seat of the car. The second cashier was taken to the site of the police stop, and the cashier immediately identified Petitioner as the robber. Petitioner had $154 in cash in his pocket. Petitioner admitted that he committed both robberies as charged.

To show that the robberies affected interstate commerce, a corporate seller in Oklahoma submitted an invoice showing that it had provided items to be sold in both Roadrunner locations. The United States agreed to move to withdraw the information to establish Petitioner's prior

3

convictions, so as to remove that potential sentence-enhancement vehicle as a barrier to the 240-month sentence bargained for in the plea agreement.

On March 15, 2012, two weeks and a few days after the plea agreement was filed with the Court, Petitioner pled guilty to both Hobbs Act robberies [Doc. 42, Chg. of Plea Hr'g Minute Entry, Case No. 2:10-CR-111]. Thereafter, the United States Probation Office issued a Presentence Investigation Report ("PSR") to assist the Court in sentencing Petitioner [PSR, Case No. 2:10-CR-111].

The probation officer who prepared the PSR determined that Petitioner's base offense level for the Hobbs Act robbery in count 1 was 20 [*Id.* at ¶ 19]. A three-level enhancement under USSG § 2B2.1(b)(2)(E) for brandishing or possession of a dangerous weapon resulted in an adjusted offense level of 23 [*Id.* at ¶¶ 20, 24]. The base level offense for the Hobbs Act robbery in count 2 was 20 [*Id.* at ¶ 25]. Adding four points for using a dangerous weapon in committing the crime boosted the adjusted offense level to 24 [*Id.* at ¶¶ 26, 30]. An upward, two-unit multiple count adjustment to the greater of the two above offenses (24 in count 2) yielded a combined adjusted offense level of 26 [*Id.* at ¶¶ 31-34].

Petitioner's career offender designation upped his combined adjusted offense level to 37, USSG § 4B1.1,[3] but a 3-point reduction for acceptance of responsibility reduced his total offense level to 34 [*Id.* at ¶¶ 35-38]. Petitioner's career offender status produced a criminal history category of VI, *see* § 4B1.1(b), and his resulting advisory guidelines range was 262 to 327 months'

---

[3] Petitioner's predicate prior felony Tennessee convictions for the application of the career offender guideline were: (1) an armed robbery conviction in 1991 (8-year sentence); (2) an aggravated robbery conviction in 1993 (9-year sentence); and (3) a 2001attempted aggravated robbery conviction (10-year sentence) [PSR at ¶¶ 46-47, 49].

4

imprisonment [*Id.* at ¶¶ 53,79]. The parties filed notices indicating that they had no objections to the PSR [Docs. 43, 44, Case No. 2:10-CR-111].

Based on Petitioner's Rule 11(c)(1)(C) plea agreement, the Court imposed a concurrent 240-month term of imprisonment on each count and a two concurrent 3-year terms of supervised release [Doc. 47 (Judgment), Case No. 2:10-CR-111]. Petitioner did not file a direct appeal, consonant with the appeal-waiver provision in the plea agreement [Doc. 38 at ¶ 8(a), Case No. 2:10-CR-111]. Instead, Petitioner submitted this pro se § 2255 motion to vacate [Doc. 1].

**B.     STANDARD OF REVIEW**

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion).

To warrant relief for a non-constitutional error, a petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error that violated due process. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (observing that a sentencing guidelines error "does not warrant collateral relief under § 2255 absent a complete miscarriage of justice"). Also, a petitioner "must clear a significantly higher hurdle than would

exist on direct appeal" to secure collateral relief. *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166). The Supreme Court has described the § 2255 remedy as "comprehensive," but, at the same time, has cautioned that "it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

**C.    DISCUSSION**

The Court turns first the threshold issues of timeliness and waiver to determine whether it can address Petitioner's motion to vacate or the claims raised therein.

    **1.    Timeliness**

Motions under 28 U.S.C. § 2255 asking for collateral relief are subject to a one-year statute of limitation, running from one of four dates. 28 U.S.C. § 2255(f)(1)-(4). Usually, the date on which the judgment of conviction becomes final is the relevant date. 28 U.S.C. § 2255(f)(1). However, a new statute of limitation is triggered for claims based on a right which "was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The Court must determine, under both §§ 2255(f)(1) and (f)(3), the limitations period that applies to Petitioner's motion to vacate.

        **a.    Subsection One**

Under subsection one, § 2255(f)(1), the one-year limitations period begins to run on the date a conviction becomes final. Petitioner's judgment of convictions was entered on July 17, 2012 [Doc. 47, Case No. 2:10-CR-111]. As noted, Petitioner did not file a notice of appeal. Hence, Petitioner's judgment became final fourteen days later, on August 1, 2012, (July 18, 2012[4]

---

[4] Rule 6(a)(1) of the Federal Rules of Civil Procedure directs that the day of the event that triggers a period that is stated in days is excluded from the computation of that period. *See* Rule 12, Rules Governing § 2255

plus 14 days), upon the lapse of the period to file a notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A) (setting a 14-day period for a criminal defendant to file a notice of appeal); *see also Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (holding that "the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed").

This means that Petitioner had one year from August 1, 2012, i.e., until August 1, 2013, to file a timely § 2255 motion under subsection one. 28 U.S.C. § 2255(f) ("A 1-year period of limitation shall apply to a motion under this section."). Petitioner filed his § 2255 motion on June 27, 2016, just shy of three years too late. Thus, his § 2255 motion, inclusive of the claims of ineffective assistance, is untimely under the first subsection of the statute, as argued in the government's response [Doc. 2 at 17 n.8].

  **b.**   **Subsection Three**

Under subsection three, a petition is timely so long as it is filed within one year after the Supreme Court issues an opinion newly recognizing a right and holding that it applies retroactively to cases on collateral review. 28 U.S.C. § 2255(f)(3). In *Johnson*, the case on which Petitioner relies to challenge his career offender status, the Supreme Court announced a substantive rule of constitutional law, which applies retroactively to cases on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1266 (2016). Therefore, Petitioner's § 2255 motion, specifically the claim raised under the authority of *Johnson*, is timely under subsection three. *See Packett v. United States*, 738 F. App'x 348, 350–51 (6th Cir. 2018) (finding that a petitioner's "§ 2255 motion was filed within one year of the *Johnson* decision and is, therefore, timely").

---

Proceedings (permitting application of the Federal Rules of Civil Procedure that are not inconsistent with statutory provisions or the § 2255 Rules). Hence, the computation of Petitioner's 14-day appeal period excludes July 17, 2012, and starts on July 18, 2012.

### 2. Waiver (*Johnson* claim)

Respondent relies on a provision set forth in the negotiated plea agreement for its assertion that Petitioner has waived his right to challenge his career-offender designation based on the *Johnson* rule [Doc. 2 at 4]. As Respondent correctly points out, Petitioner's plea agreement contained a provision waiving his right to file a § 2255 motion, except for claims of ineffective assistance of counsel or prosecutorial misconduct unknown to him by the time of entry of judgment [Doc. 38 at ¶ 8(b), Case No. 2:10-CR-111].

It is well recognized that a party may waive a provision intended for his benefit in a contract or statute. *Shutte v. Thompson*, 82 U.S. 151 (1872). Even fundamental constitutional rights may be waived, and the waiver is enforceable if it is made knowingly and voluntarily. "[A] defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United States*, 258 F.3d 448, 450-52 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). Therefore, if Petitioner understood the terms of the plea agreement and made the waiver of his right to file a § 2255 motion voluntarily and knowingly, the waiver is valid and enforceable.

Although no transcript of the Court's change of plea hearing is in the record, this Court recalls that it verified, in testimony under oath by Petitioner, that he had read the plea agreement or that the plea agreement had been read to him, that he discussed the plea agreement with counsel and understood all its provisions, and that he had had fully discussed the waiver provision with his attorney [Doc. 46 (minutes), Case No. 2:11-CR-111]. It is clear to this Court that Petitioner's waiver of his right to file a § 2255 motion was voluntarily and knowingly made. Thus, because the *Johnson*-based claim does not fall within the limited scope of claims that were exempted from the waiver provision, it is barred by that provision.

### 3. *Johnson* Claim (Law and Analysis)

Not only is Petitioner's *Johnson* claim barred by his knowing and voluntary waiver of his right to file a § 2255 motion but, as the United States points out in its response, *Johnson* does not change Petitioner's sentence or provide him a basis for relief.

To reiterate, *Johnson* held that ACCA's definition of "violent felony" was so vague that it violated due process.[5] Petitioner asserts that the reasoning underlying *Johnson* likewise applies to the career offender guideline's definition of "crime of violence," which means that the cited guideline that was used in the PSR to calculate his sentence for his Hobbs Act robbery convictions rests on an equally vague definition.

Petitioner accurately states that *Johnson* struck down the ACCA's residual clause, but he fails to acknowledge that *Johnson* did not address, recognize, analyze, or rule on any issue of vagueness that might inhere in the career offender guideline. Moreover, in a post-J*ohnson* decision, the Supreme Court foreclosed Petitioner's claim.

In *Beckles v. United States*, 137 S. Ct. 886 (2017), a case decided after the United States filed its response in Petitioner's case, the Supreme Court held that the sentencing guidelines are not subject to a due process challenge as vague. *Id*. at 894 (reasoning that because the guidelines "merely guide the district courts' discretion, [they] are not amenable to a vagueness challenge"). Commenting that the sentencing system that preceded the guidelines was purely discretionary and not unconstitutionally vague, the Supreme Court observed that it was difficult to see "how the present system of guided discretion could be [unconstitutionally vague]." *Id.* at 894. Due process's

---

[5] The ACCA defines a "violent felony," in part, as a crime that "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (emphasis added). *Johnson* invalidated the italicized part of the definition as vague. 135 S. Ct. at 2563.

9

notice requirement was satisfied in that the applicable statutory range cabined the "permissible bounds of the court's sentencing discretion." *Id.* at 895. Due process concerns about arbitrary enforcement were not implicated because the guidelines prohibited no conduct and established no minimum and maximus penalties for any crime. *Id.* at 894-95. Ultimately, the Supreme Court concluded "that § 4B1.2(a)'s residual clause is not void for vagueness." *Id.*

Undeterred by the *Beckles* ruling, Petitioner suggests that, despite *Beckles*, his Hobbs Act robberies do not fall within the definitional scope of a "crime of violence" in § 4B1.2(a). Petitioner's argument runs counter to this circuit's precedents, which he cites but misreads.

In *United States v. Gooch*, 850 F.3d 285 (6th Cir. 2017), a case relied on by Petitioner in his motions to supplement, the Sixth Circuit announced that it would "join our sister circuits in ruling that Hobbs Act robbery constitutes a crime of violence." *Id.* at 292 (listing cases), *cert. denied*, 137 S. Ct. 2230, 198 L. Ed. 2d 670 (2017). Though *Gooch* was decided in the context of a firearms-related conviction under 18 U.S.C. § 924(c) rather than the guidelines, the Sixth Circuit has suggested that its holding applies similarly to the career offender guideline. *See United States v. Banks*, 722 F. App'x 505, 508 (6th Cir. 2018) (commenting that the defendant, convicted of conspiracy to commit Hobbs Act robbery, did not address "any differences between the statutory and the Guidelines crime-of-violence definitions, or otherwise explain why *Gooch* and [*United States v. Tibbs*, 685 F. App'x 456 (6th Cir. 2017)] are not dispositive here"); *see also United States v. Perry*, 703 F.3d 906, 910 (6th Cir. 2013) (instructing that "whether a conviction is a 'violent felony' under § 924(e) is analyzed the same way as whether a conviction is a 'crime of violence' under USSG § 4B1.2").

Also, in the motions to supplement, Petitioner offers post-*Johnson* cases, including *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), *United States v. Camp*, 903 F.3d 594 (6th Cir. 2018),

10

and a host of other federal court decisions [Docs. 4-5], as new authority to support his *Johnson* claim. *Dimaya* applied the reasoning in *Johnson* to invalidate the residual clause of 18 U.S.C. § 16(b)'s definition of a "crime of violence" in the Immigration and Nationality Act. 138 S. Ct. at 1223. However, *Dimaya* did not invalidate, modify, or change the career offender guideline. *Dimaya* does not help Petitioner.

Moreover, even after *Dimaya*, a Hobbs Act robbery remains a predicate "crime of violence" for career offender purposes under the use-of-force clause of § 924(c). *United States v. Richardson*, 906 F.3d 417, 425 (6th Cir. 2018), *overruled on other grounds*, No. 18-7036, 2019 WL 2493913 (U.S. June 17, 2019); *Camp*, 903 F.3d at 597 (citing *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017)); *see also In re Gordon*, No. 18-3449, 2018 WL 3954189, at *1 (6th Cir. Aug. 14, 2018) (remarking that even if "*Dimaya* applies to § 924(c)(3)(B), that rule has no effect on [petitioner's] case because his convictions for Hobbs Act robbery qualify as crimes of violence under § 924(c)(3)(A)").

Petitioner next argues that his prior convictions for armed robbery, aggravated robbery, and attempted aggravated robbery do not constitute "violent felony convictions" as that term is defined in the guidelines. The Court infers that, based on these arguments, Petitioner is claiming that, absent these convictions, he lacks the necessary convictions for career offender enhancement [Doc. 5 at 2-3].

Unfortunately for Petitioner's challenge to his prior convictions, a Tennessee robbery conviction is a violent felony. In *United States v. Mitchell*, 743 F.3d 1054 (6th Cir. 2014), the Sixth Circuit held that a Tennessee robbery conviction is "categorically a 'violent felony' under ... the ACCA" because it requires a degree of force that satisfies the ACCA's elements clause. *Id.* at 1058-60. Also, contrary to Petitioner's suggestion that the Sixth Circuit "conceded" in 2018 that

11

*Mitchell* was "wrongly decided," [Doc. 5 at 3], this circuit recently ruled that "*Mitchell*'s holding applies with equal force to Tennessee robbery and Tennessee aggravated robbery." *United States v. Porter*, 765 F. App'x 128, 129 (6th Cir. 2019). The same reasoning supporting that robbery and aggravated robbery are violent felony convictions holds true for a Tennessee attempted aggravated robbery conviction. *United States v. Lester*, 719 F. App'x 455, 458 (6th Cir. 2017); *see also United States v. Perry*, 703 F.3d 906, 910 (6th Cir. 2013) ("Whether a conviction is a 'violent felony' under § 924(e) is analyzed the same way as whether a conviction is a 'crime of violence' under USSG § 4B1.2."). Therefore, Petitioner's Tennessee robbery-related convictions were "prior violent felony convictions" as that term is defined in USSG § 4B1.2(c).[6]

Finally, and perhaps most significantly, Petitioner was not classified or sentenced under the guidelines' residual clause in USSG § 4B1.2 [Doc. 2 at 16]. Instead, Petitioner was sentenced pursuant to his Rule 11(c)(1)(C) plea agreement, and not the guidelines. Because *Johnson* has no application in Petitioner's case, any sentencing claim predicated on *Johnson* is legally and factually frivolous and provides no basis for relief.

### 4. Ineffective Assistance Claim (Law and Analysis)

Although the Court has found that Petitioner's claim of ineffective assistance is untimely under § 2255(f)(1), the claim similarly fails on the merits.

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional

---

[6] A defendant has incurred "two prior felony convictions" if, *inter alia*, he committed the instant offense after he sustained at least two felony convictions of a crime of violence. USSG § 4B1.2(c).

12

norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). A court must presume that counsel's assistance was effective, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (instructing reviewing courts to "remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'") (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 (directing that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d. 177, 201 (6th. Cir 2003) (citing *Strickland*).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). In a guilty plea context, to establish prejudice a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Petitioner submits that he does not believe that his counsel explained to him the mitigating factors applicable to his case, and he speculates that his mental health condition would have afforded him a basis for a downward departure [Doc. 1 at 4].

Mental conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. USSG § 5H1.3 Mental and Emotional Conditions (Policy Statement) (Sentencing Guidelines Manual (2015)). In some cases, a downward departure may be appropriate for specific treatment purposes. *Id*. (citing USSG 5C1.1 Application Note 6).

The Sixth Circuit has "repeatedly found information relating to an individual's. . . mental health . . . among other things, to be relevant to sentencing." *United States v. Pineda*, 755 F. App'x 543, 548 (6th Cir. 2018 (Stranch, J., concurring). Thus, counsel may give ineffective assistance by failing to seek a downward departure where the supporting evidence of the mental condition might have convinced the Court to adjust a sentence downward. *United States v. Parker*, 57 F. App'x 803, 805 (10th Cir. 2003) (denying a certificate of appealability where a petitioner failed to show a "reasonable probability" that the court would have imposed a shorter sentence had counsel sought a downward departure for his mental health history).

Here, Petitioner does not offer the Court any facts to flesh out his claim. For example, Petitioner does not identify the mental condition from which he suffers that is present "to an unusual degree" or distinguishable from mental disorders in "typical cases." Similarly, Petitioner fails to connect his unstated mental condition to the facts of his case or to those of other cases to

show that his mental disability is such that it qualifies for a downward departure. Without factual support, Petitioner's ineffective assistance claim is conclusory. A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Furthermore, there are no allegations of prejudice. To paraphrase the paramount case on guilty-plea prejudice flowing from counsel's deficient performance, "Petitioner did not allege in his [§ 2255 motion] that, had counsel correctly informed him about his [mitigating factors], he would have pleaded not guilty and insisted on going to trial." *Hill*, 474 U.S. at 60. Too, as the United States argues in its response, the Court's acceptance of the plea agreement obliged it to impose the 240-month sentence and left no room to downwardly depart from that sentence.

Lastly, according to Petitioner's mental evaluation, his principle diagnosis was malingering and his current conditions were determined to be well-treated and not to require special considerations in prison placement [Doc. 25 (sealed), Case No. 2:10-CR-111]. The Court had access to the mental evaluation, would have considered the evaluation had Petitioner's mental condition been advanced as a basis for downward departure, but under the circumstances presented in the record, would have not have granted one, had counsel so moved. Counsel is not required to advance hollow arguments to avoid a charge of ineffective assistance, *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and cannot be ineffective for failure to raise a groundless claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001). Petitioner's ineffective assistance claim lacks merit.

## III. OTHER PENDING MOTIONS

Petitioner argues, in his motion requesting court-appointed counsel [Doc. 3], that he is incarcerated and is unable to investigate all the existing issues in his case and (by implication) that appointed counsel could perform that task for him.

Because Petitioner's § 2255 motion is untimely, lacks merit, does not entitle him to collateral relief, and will be denied, his motion for appointment of counsel [*Id.*] will be DENIED as moot. For the reasons expressed earlier in this Opinion, Petitioner's motions to supplement [Docs. 4-5] will be GRANTED.

## IV. CONCLUSION

In view of the foregoing law and analysis of Petitioner's claims, as discussed in this Opinion, Petitioner's motion to vacate, set aside, or correct his sentence [Doc. 1] will be DENIED and DISMISSED.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

Having examined each of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of his claims or the procedural rulings made on

16

the claims was debatable or wrong.  Because reasonable jurists could not disagree with the Court's denial of the § 2255 motion and could not conclude that issues offered in the motion are "adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the Court will DENY issuance of a certificate of appealability.  Fed. R. App. P. 22(b).  The Court will CERTIFY that any appeal from this action would not be taken in good faith, Fed. R. App. P. 24(a), and consequently will DENY Petitioner leave to proceed *in forma pauperis* on appeal.  A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge